**CARUSO GLYNN, LLC**
Attorneys for Plaintiff
*Heineken USA Inc.*
242-03 Northern Blvd.
Suite 201
Little Neck, N.Y. 11362
(718) 819-8667
Attorney: Lawrence C. Glynn (LG 6431)
CG File No.:   42.011620.01

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
HEINEKEN USA INC.,                                   Case No.:   20 Civ.          (    )
And Interested Subrogated Underwriters,

                        Plaintiff,                                      **VERIFIED**
                                                                                     **COMPLAINT**

       -against-

SATELLITE LOGISTICS GROUP, INC.,

                        Defendant.
-------------------------------------------------------------x

Plaintiff HEINEKEN USA INC. ("Heineken") and its Interested Subrogated Underwriters, by its attorneys, **CARUSO GLYNN, LLC**, alleges, upon information and belief, as follows:

### The Parties

1.     Heineken is a business entity and/or corporation existing under and pursuant to the laws of the State of New York with an office and place of business at 360 Hamilton Avenue, Suite 1103, White Plains, New York 10601.

2.     Defendant, SATELLITE LOGISTICS GROUP, INC. ("Satellite"), is a business entity and/or corporation existing under and pursuant to the laws of the State of Illinois which operates as

a warehouseman and/or common carrier of goods with an office and place of business at 6220 West 73rd Street, Bedford Park, Chicago, Illinois 60638.

## Jurisdiction

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 as Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00.

4. This Court has in personam jurisdiction over each of the captioned defendants who conduct business within the State of New York, and within the United States as a whole within the meaning of Rule 4(k)(2) of the Federal Rules of Civil Procedure, and were at all material times engaged in the business of carriage of cargo for hire and/or the provision of services related thereto, and/or were bailees or warehousemen.

## Background

5. At all times relevant, Heineken was and is the United States importer of one of the world's premiere beers brewed in Amsterdam since 1873.

6. Heineken receives multiple shipments of bottled and canned beer by non-party Heineken Breweries in Amsterdam, Netherlands on a near weekly basis.

7. Prior to February 19, 2019, Heineken had purchased from Heineken Breweries the contents of eleven (11) General Purpose ("GP") shipping containers carrying product from the latter for distribution throughout the United States.

8. The contents of these 11 containers consisted of thousands of cases of bottled and/or canned beer of various Heineken Breweries brands ("the Cargo").

9. Between January 2, 2019 through approximately January 11, 2019, said GP containers were shipped aboard several different vessels from Rotterdam, Netherlands and Antwerp, Belgium to New York (port of Newark).

10. The Cargo was then transshipped via multiple rail shipments to Heineken's partnering warehouse in Bedford Park, Chicago, Illinois.

11. At all times relevant, Heineken's partnering warehouse was owned, operated, managed and/or controlled by defendant Satellite Logistics.

12. The 11 containers arrived in Bedford Park during the period between January 28 and February 11, 2019.

13. It was intended by Heineken, and clearly conveyed to Satellite, that the Cargo was to be promptly removed from the containers and stored within defendant's climate controlled warehouse.

14. However, the Cargo was not removed from the containers and instead left in the adjacent rail yard for several days in temperatures ranging between 0 to -22 degrees Fahrenheit (-18 to -30 degrees Celsius).

15. This extreme temperature abuse caused the Cargo to become frozen.

16. When beer is subject to temperatures below -10 degrees Celsius (14 degrees Fahrenheit), and freezes, its taste is irreversibly changed.

17. The alcohol and water start shifting and possible present live yeast in the beer will not survive (their cell walls will burst).

18. The result is a decrease in carbonation and when the beer thaws, haze and/or flakes may present within the beer itself.

19. Upon a thorough inspection of the Cargo, it was determined that 15,030 cases of beer were damaged and the product not fit for human consumption.

## First Cause of Action
### (Breach of Contract)

20. The damage and/or loss of the product in suit was caused in whole or in part by defendant's fundamental breaches of, and deviations from, the terms of the governing contracts of carriage.

21. Said breaches and deviations included (a) defendants' failure to deliver the cargo as scheduled to Heineken and/or its designated consignee(s); (b) the failure to properly care for the cargo between at the time of receipt of the cargo at the place of delivery, i.e., the rail yard adjacent to defendant's warehouse, and (c) the eventual delivery of the cargo to Heineken in a damaged, short, missing and depreciated condition.

22. The amount of cargo determined to be damaged and not fit for human consumption was $200,349.36.

23. Freight charges for the damaged portion of the Cargo totaled $12,535.61.

24. Heineken's cost to destroy the damaged cargo totaled $21,496.91.

25. By reason of the premises, plaintiff, and those on whose behalf they sue, have sustained damages as nearly as same can now be estimated, no part of which has been paid, in the amount of $234,381.88.

## Second Cause of Action
### (Bailment)

26. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "25" as though more fully set forth herein at length.

27. Defendant Satellite was entrusted with the certain beer products belonging to Heineken.

28. Said beer products were received by Satellite in good order and condition.

29. The possession of the Cargo by defendant Satellite created a bailment.

30. Through no fault of Heineken, the aforementioned goods were damaged, destroyed and/or rendered useless whilst in the possession of defendant Satellite.

31. Satellite was at all times a part of the chain of custody of a product intended for human consumption.

32. Satellite's failure to protect the Cargo from thermal damage was a critical breach of the food/beverage handling chain of custody.

33. Said critical breach was due to the negligence of Satellite in failing to properly care for the Cargo.

34. As a result of Satellite's breaches, 15,030 cases of beer were deemed to be unfit for human consumption.

35. As a result of Satellite's breach of this bailment, plaintiff, and those on whose behalf they sue, have sustained damages as nearly as same can now be estimated, no part of which has been paid, in the amount of $234,381.88.

36. Heineken and its subrogated underwriters, are entitled to recover that amount from the defendant.

WHEREFORE, Plaintiff demands:

(a) That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

(b) That judgment may be entered in favor of Plaintiff against Defendants for the amount of $234,381.88, together with interest and costs and the disbursements of this action;

(c) That this Court will grant to Plaintiff such other and further relief as may be just and proper.

Dated: Little Neck, New York
       April 14, 2020

>                   Yours, etc.,
>
>                   **CARUSO GLYNN, LLC**
>                   Attorneys for Plaintiff
>                   *Heineken USA Inc.*
>
>           By: *Lawrence C. Glynn*
>                   Lawrence C. Glynn (LCG-6431)
>                   242-03 Northern Blvd.
>                   Suite 201
>                   Little Neck, N.Y. 11362
>                   (718) 819-8668
>                   *lglynn@carusoglynn.com*
>                   CG File No.: 42.011620.01

## **VERIFICATION**

LAWRENCE C. GLYNN, under the penalties of perjury, hereby affirms:

That he is an attorney admitted to practice before the Courts of this State and is a member of the firm of **CARUSO GLYNN, LLC**, attorneys for Plaintiff herein.

That he has read the foregoing Verified Complaint and knows the contents thereof and that the same is true to his own knowledge, except as to the matters therein stated to be alleged upon information and belief and as to those matters, he believes them to be true.

Deponent further says that the sources of his information and the grounds for his belief as to all matters therein stated to be alleged on information and belief, is derived from documents, records, correspondence and memoranda of Plaintiff concerning the maters set forth in the Verified Complaint in the possession of deponent.

Dated: Little Neck, New York
April 14, 2020

*Lawrence C. Glynn*
Lawrence C. Glynn